UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 21-21767-CIV-MARTINEZ-BECERRA

MAYRA C. MARTINEZ and PERSIDA
MALDONADO,

        Plaintiffs,

vs.

SCOTTSDALE INSURANCE COMPANY,

        Defendant.
_____/

## SCOTTSDALE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

    Defendant, Scottsdale Insurance Company ("Scottsdale"), pursuant to Federal Rule of Civil Procedure 56(a) and Southern District of Florida Local Rule 7.1(a), moves for the entry of an order granting summary judgment in its favor and against Plaintiffs, Mayra Martinez and Persida Maldonado ("Plaintiffs"). The grounds for this motion are contained in the following memorandum of law.

### PRELIMINARY STATEMENT

    In this action, Plaintiffs seek to recover from Scottsdale for breach of an insurance contract, asserting that it is entitled to payment for damage to their residential property that allegedly occurred when Hurricane Irma struck South Florida on September 10, 2017. However, Plaintiffs did not notify Scottsdale of the loss until two years and four months after Hurricane Irma. As a matter of law, this was not "prompt notice" under the policy, and creates a presumption of prejudice to Scottsdale.

Plaintiffs cannot overcome the presumption of prejudice. Plaintiffs made repairs to the property, including the roof and interior, in the years following Hurricane Irma and prior to submitting a claim to Scottsdale. While Scottsdale's expert was able to opine that there was no hurricane wind damage to the roof, the delay in time from Irma to the reporting of the claim seriously hindered its investigation. Further, the air-conditioning unit that Plaintiffs claim was damaged by the hurricane was replaced prior to Plaintiffs submitting their claim, making it impossible for Scottsdale to determine whether it actually was damaged by the hurricane. Due to the late reporting of the claim Scottsdale has been prejudiced in its ability to establish the condition of the Plaintiffs' property immediately before Hurricane Irma and the effects, if any, on the property as a result of Hurricane Irma. Accordingly, and as discussed in more detail below, the Court should grant summary judgment in Scottsdale's favor.

## SUMMARY OF MATERIAL FACTS

Plaintiffs are the owners of a residential property located at 14738 SW 132nd Avenue in Miami, Florida. (SMF ¶ 1.[1]) The home was purchased as new construction in 1994. (SMF ¶ 2.) Plaintiff Mayra Martinez is a licensed insurance agent (SMF ¶ 3) and therefore has specific knowledge and familiarity with the insurance industry in general and insurance policies in particular.

Hurricane Irma made landfall in South Florida on September 10, 2017. Following Hurricane Irma, Plaintiffs claim that their property sustained immediate and ongoing damage to their roof and interior. Despite the claimed and ongoing damages to their property, Plaintiffs did

---

[1] Pursuant to Southern District of Florida Local Rule 56.1(a), Scottsdale has filed a separate Statement of Material Facts, supported by specific citations to the summary judgment evidence, in support of its Motion for Summary Judgment. Citation to the Statement of Material Facts appears as "SMF ¶ [paragraph number]."

not report a claim to Scottsdale until January 23, 2020, two years and four months after Hurricane Irma struck. (SMF ¶ 12.)

Plaintiffs' property was insured under an insurance policy issued by Scottsdale, Policy No. HOS1398236 (the "Policy"). (SMF ¶ 13.) The Homeowners 3 – Special Form of the Policy contains the following pertinent provision:

> **SECTION 1 – CONDITIONS**
>
> **C.     Duties After Loss**
> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, and "insured" seeking coverage, or a representative of either.
>
> 1.     Give prompt notice to us or our agent.

(SMF ¶ 14.)

The Special Provisions – Florida endorsement to the Policy contains the following pertinent language:

> **SECTION 1 – CONDITIONS**
>
> **C.     Duties After Loss**
>
> Paragraph 1. is replaced by the following:
>
> 1.     Give prompt notice to us or our agent, except that a claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm must be given to us in accordance with the terms of this Policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage.

(SMF ¶ 15.)

On January 28, 2020, five days after receiving notice of the loss, Scottsdale sent to Plaintiffs a reservation of rights letter reserving its rights and defenses under the Policy due to the failure to give prompt notice. (SMF ¶ 16.) Scottsdale retained an Independent Adjuster, Gary Carmichael, to inspect the Plaintiffs' property on February 10, 2020. Mr. Carmichael testified that the delay from

the landfall of Irma to the time of his inspection hampered his ability to observe any of the claimed damages directly after the storm and that had there not been such a delay it would have been easier for anybody trying to make a determination as to what may have caused any problems. (SMF ¶ 16.)

On April 7, 2020, Scottsdale sent correspondence to Plaintiffs noting that the claim was not reported to Scottsdale until some 865 days after Hurricane Irma.  The letter also noted that an Independent Adjuster inspected the property and found no wind damage to the roof or exterior of the property as a result of Hurricane Irma. Scottsdale further indicated that water damage to the interior portions of the house were not found to be due to roof leaks or leaks through the walls caused by Hurricane Irma.  In addition, Scottsdale advised that mold and wood rot damages were excluded from coverage under the policy.  Finally, Scottsdale advised that claimed damages to the second floor landing and first floor kitchen and bathroom were not due to any roof leaks, but from some other source, and would be a separate occurrence from any claim for damages from Hurricane Irma.  Plaintiffs were instructed to contact Scottsdale if they wished to file these additional claims.  Plaintiffs never contacted Scottsdale to file any additional claims. (SMF ¶ 17.)

In her deposition, Plaintiff Martinez acknowledged that due to the passage of time, she could not remember when she first noticed damage to her property as a result of Hurricane Irma. (SMF ¶ 5.)  She further acknowledged that she made repairs to both the roof and the interior of the house, but she could not recall the name of the person or company who did the repairs or when exactly they were made. (SMF ¶¶ 6, 7, 9, 10.)

In October of 2021, well after suit was filed, Plaintiff retained Felix Rodriguez, P.E.  Mr. Rodriguez concluded that the damage to Plaintiffs' roof and interior was caused by Hurricane Irma. (SMF ¶ 20.)  Under oath, Mr. Rodriguez acknowledged that being able to inspect the Plaintiffs' roof closer in time after Hurricane Irma would have provided him more information and

would have allowed him to reach his opinions more easily.  (SMF ¶¶ 21, 23.)  Likewise, Mr. Rodriguez acknowledged that Plaintiffs' AC unit had been replaced prior to the time of his inspection and that had he been able to inspect it before it was replaced, he would have been able to render his opinion with respect to the AC unit more easily and with more certainty. (SMF ¶ 22.)

Scottsdale retained John Carroll, P.E. of J.S. Held, Inc. to inspect the Plaintiffs' property.  Mr. Carroll concluded that the historical and current imperfections at the Plaintiffs' residence are the result of on-going flashing leaks at the skylights and that the additional damage to the interior of the kitchen, dining room, and laundry room are directly related to overland water flow caused by long-term water exposure and are unrelated to damage from a single isolated event such as Hurricane Irma. (SMF ¶ 27.)  However, given the delay in reporting the claim and the lack of any photographs taken shortly after Irma's landfall, Mr. Carroll was hampered in his ability to determine the condition of the Plaintiffs' property at the time of the storm and to be able to more easily determine what damages, if any, were caused by Hurricane Irma. (SMF ¶¶ 24, 25, 29, 30.)  In his deposition, Mr. Carroll was asked whether he could rule out Hurricane Irma as a cause of the Plaintiffs' claimed damages and he testified that the delay in time and lack of photographs and other evidence related to prior roof repairs prejudiced his ability to reach a definitive, 100% conclusion. (SMF ¶¶ 28, 29.)

In discovery, Plaintiffs produced an estimate of costs to repair the claimed damages attributable to Hurricane Irma in the amount of $157,431.44.  (SMF ¶ 30.)  Martinez testified, however, that she believes the cost to repair the claimed damages is actually higher given the passage of time.  (*Id*.)   In the Spring of 2021, Plaintiffs' had their roof replaced at a total cost of $24,240.00. (SMF ¶¶ 31, 32.)  Notably, the cost to replace the roof as contained in Plaintiffs' estimate is $69,487.25, almost three times the actual cost of repair.

Case No. CA-020418-01

**ARGUMENT**

A.      **Standard for Summary Judgment**

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The court's focus on reviewing a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1364 (S.D. Fla. 2001) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That is, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up).

The parties may support their positions by citation to the record, including, among other things, depositions, documents, affidavits, or declarations. *Capitol Specialty Ins. Corp. v. Royal Crane, LLC*, No. 14-Civ-60815, 2015 U.S. Dist. LEXIS 23983, at *9 (S.D. Fla. Feb. 26, 2015) (citing Fed. R. Civ. P. 56(c)). In reviewing a motion for summary judgment, the evidence and all reasonable inferences should be viewed in the light most favorable to the non-moving party. *Howard v. Steris Corp.*, 550 F. App'x 748, 750 (11th Cir. 2013). However, "[s]ome alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Furthermore, summary judgment is properly regarded not as a disfavored procedural shortcut, but, rather, as an integral part of the federal

rules as a whole, which are designed to secure a just, speedy and inexpensive determination of every action." *Gaston*, 129 F. Supp. 2d at 1364 (citing *Celotex*, 477 U.S. 317 at 327).

**B.     The Applicable Law**

Florida substantive law applies to the present case because the Court is sitting in diversity. *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148 (11th Cir. 2010). Under Florida law, the interpretation of an insurance policy is a question of law for the Court. *Technical Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998); *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010). "Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013).

However, in construing insurance policies according to their plain meaning, "courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Yet if policy language is susceptible to more than one reasonable interpretation, the policy is considered ambiguous and must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *Id.* Nevertheless, the policy "must actually be ambiguous" to permit such a construction. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). Courts may not "put a strained and unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity." *Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc.*, 586 So. 2d 95, 97 (Fla. Dist. Ct. App. 1991). The mere fact that an insurance provision is "complex" or "requires analysis" does not make it ambiguous. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)

**C.      Plaintiffs' Notice to Scottsdale was not Prompt as a Matter of Law and Plaintiffs Cannot Overcome the Presumption of Prejudice to Scottsdale.**

The purpose of an insurance policy's notice provision is to allow the insurer to "evaluate its rights and liabilities, to afford it an opportunity to perform a timely investigation, and to prevent fraud and imposition upon it." *Yacht Club on the Intracoastal Condo. Ass'n v. Lexington Ins. Co.*, 599 F. App'x 875, 881 (11th Cir. 2015) (quoting *Laster v. U.S. Fid. & Guar. Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA 1974)). An insured's failure to give timely notice under such a provision "is a legal basis for the denial of recovery under the policy." *Laquer v. Citizens Prop. Ins. Corp.*, 167 So. 3d 470, 473 (Fla. 3d DCA 2015). Where, as here, the policy requires "prompt notice," the term "prompt" means that notice must be given with "reasonable dispatch and within a reasonable time in view of all the facts and circumstances of the particular case." *PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 F. App'x 845, 848 (11th Cir. 2014) (quoting *Employers Cas. Co. v. Vargas*, 159 So. 2d 875, 877 (Fla. 2d DCA 1964)).

Whether an insured's untimely notice of loss forms a basis for the denial of recovery under the policy requires a two-step analysis under Florida law. *Yacht Club*, 599 F. App'x at 879 (citing *LoBello v. State Farm Fla. Ins. Co.*, 152 So. 3d 595, 599 (Fla. 2d DCA 2014)). The first step is to determine whether the insured provided timely notice. *Id.* Next, if notice was untimely, prejudice to the insurer is presumed; however, that presumption may be rebutted by a showing that the insurer has not been prejudiced. *Id.* (citing *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985)).

   **1.      Plaintiffs Failed to Provide Prompt Notice**

While the question of whether notice was timely, "depending as it does upon the surrounding circumstances, is ordinarily for decision by the trier of fact, yet when facts are undisputed and different inferences cannot reasonably be drawn therefrom, the question is for the

court." *Yacht Club*, 599 F. App'x at 879 (quoting *State Farm Mut. Auto. Ins. Co. v. Ranson*, 121 So. 2d 175, 182 (Fla. 2d DCA 1960). Here, no reasonable factfinder could determine that Plaintiffs' notice was timely.

While there is no bright-line rule setting forth a particular period of time beyond which notice in general under a policy cannot be considered "prompt," Florida courts nevertheless "have interpreted "prompt" differently when damage is caused by a known event, such as a hurricane, or when the insured was on-site when readily apparent problems developed." *Yacht Club*, 599 F. App'x at 879-80. Thus, courts have found that a period of anywhere from four weeks to eighteen months is not considered prompt notice under such known-event circumstances. *See, e.g.*, *PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 F. App'x 845, 849 (11th Cir. 2014) (six months); *Adderly v. Hartford Ins. Co. of the Midwest*, No. 19-cv-25304, 2020 U.S. Dist. LEXIS 153287, at *9-10 (S.D. Fla. Aug. 21, 2020) (eighteen months); *De La Rosa v. Peninsula Ins. Co.*, 246 So. 3d 438, 442 (Fla. 4th DCA 2018) (fifteen months); *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 786 (Fla. 3d DCA 1981) (six weeks); *Deese v. Hartford Acc. & Indem. Co.*, 205 So. 2d 328, 329 (Fla. 1st DCA 1967) (four weeks); *Morton v. Indemnity Ins. Co.,* 137 So. 2d 618 (Fla. 2d DCA 1962) (six and half months).

Here, Plaintiffs waited **two years and fourth months (865 days)** after Hurricane Irma had passed before reporting a claim for damages to Scottsdale, despite the fact that Hurricane Irma was a known event and Plaintiffs were at their property at the time of purported loss.  It is undisputed that Plaintiffs were  aware of alleged damage to their property at least at some point in 2017, even though Martinez's memory of the dates were hampered by the passage of time.  It matters not that Plaintiffs did not become aware of additional damages until later. *See 1500 Coral Towers Condo. Ass'n v. Citizens Prop. Ins. Corp.*, 112 So. 3d 541, 543 (Fla. 3d DCA 2013) ("When an insurance

contract contains a provision which applies to notice of the damage claim, an insured must give notice of the loss that implicates a potential claim without waiting for the full extent of the damages to become apparent."). As a matter of law, then, Plaintiffs' January 23, 2020, notice to Scottsdale of purported hurricane damage was not "prompt" under the Policy. Prejudice to Scottsdale is therefore presumed. *See Yacht Club*, 599 F. App'x at 879.

### 2. Plaintiffs Unable to Rebut the Presumption of Prejudice to Granada

After a presumption of prejudice to the insurer arises, the burden shifts to the insured to show a lack of prejudice. *Yacht Club*, 599 F. App'x at 88. To carry this burden, an insured may submit evidence creating a dispute of fact as to:

> (a) whether better conclusions could have been drawn without the delay in providing notice;
>
> (b) whether those conclusions could have been drawn more easily;
>
> (c) whether the repairs to the affected areas that took place in the interim would complicate an evaluation of the extent of the damage or the insured's efforts to mitigate its damages, or
>
> (d) whether an investigation conducted immediately following the occurrence would not have disclosed anything materially different from that disclosed by the delayed investigation.

*Lehrfield v. Liberty Mut. Fire Ins. Co.*, 396 F. Supp. 3d 1178, 1184 (S.D. Fla. 2019) (cleaned up) (citing *PDQ Coolidge*, 566 F. App'x at 849-50; *Yacht Club*, 599 F. App'x at 881-82).

The present case is quite similar to several other cases recently before this Court. This Court has granted Scottsdale summary judgment on the late notice issue in *Ro-Ma Holdings #4, LLC v. Scottsdale Insurance Co.*, No. 20-cv-21599, 2021 U.S. Dist. LEXIS 75860 (S.D. Fla. Apr. 19, 2021) (14 month delay in reporting claim); *LMP Holdings, Inc. v. Scottsdale Insurance Co.*, Case No. 20-24099 (S.D. Fla. Nov. 1, 2021) (23 month delay in reporting claim); and *Julio Ramirez v. Scottsdale Insurance Co.*, Case No. 20-cv-22324 (S.D. Fla. Oct. 29, 2021) (almost 20

month delay in reporting claim). In the *Ro-Ma Holdings #4, LLC* and *LMP Holdings, Inc.* cases, the plaintiffs contended that the Scottsdale was not prejudiced because it was able to conduct an inspection of the property and conclude that damage to the respective properties were not caused by Hurricane Irma. The Court, however, found that the plaintiffs had failed to proffer any evidence "that an earlier inspection would not have impacted the investigation." *Id.* at *8 (quoting *PDQ Coolidge*, 566 F. App'x at 850). The Court found no evidence that the insurer was able to inspect the property when it was in the same condition as it was in right after the storm. Moreover, in each case, and like in the instant matter, the properties had worsened over time and repairs had been conducted on the properties before Scottsdale was notified of the loss.

The Court further found that there was no evidence addressing whether Scottsdale could have drawn better conclusions without the lengthy delays or whether its expert engineer's conclusions could have been drawn more easily. The Court found that, on the contrary, Scottsdale's experts had affirmed that while they was able to reach their conclusions within a reasonable degree of professional certainty, the lapse of time between Hurricane Irma and the experts' inspections and numerous repairs to the properties made their evaluation more difficult. The Court found that Scottsdale was prejudiced by the failure to provide prompt notice and that the plaintiffs had failed to rebut the presumption of prejudice, and entered summary judgment in favor of Scottsdale.

Here, as in *Ro-Ma Holdings*, *LMP Holdings, Inc.*, and *Ramirez*, there is no evidence that an earlier inspection of the Plaintiffs' property would not have impacted Scottsdale's investigation. In fact, the record is exceedingly clear that Scottsdale was **not** able to inspect the property when it was in the same condition as it was right after the storm. Multiple repairs had been made to the roof and the interior of the property and the allegedly storm-damaged AC unit was replaced before Scottsdale was ever given notice of the loss. Together with the lapse of well over two years, all of

Case No. CA-020418-01

this hindered both Carmichael's and Carroll's inspection. Plaintiffs' own expert also acknowledges that inspecting the property shortly after Hurricane Irma would have made reaching his conclusions easier.  In addition, due to the passage of time, Plaintiff Martinez herself  was not able to testify with any certainty as to when claimed damages were initially noted and who performed repairs or when those repairs were performed.  This further highlights the prejudice to Scottsdale and its ability to make a timely inspection of Plaintiffs' property after the storm and more easily evaluate the claim. Plaintiffs' failure to give timely notice plainly prejudiced Scottsdale, and there is nothing in the record that shows Plaintiffs' can rebut this presumption of prejudice.

## CONCLUSION

Based on the pleadings and summary judgment evidence on file, there is no genuine issue as to any material fact, and Scottsdale Insurance Company is entitled to a final summary judgment in its favor as a matter of law.

Respectfully submitted,

*s/Clinton S. Payne*
**RONALD L. KAMMER**
Florida Bar No. 360589
rkammer@hinshawlaw.com
**CLINTON S. PAYNE**
Florida Bar No. 0044644
cpayne@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
2525 Ponce de Leon Blvd.  4th Floor
Coral Gables, FL 33134
Telephone: (305) 358-7747
Facsimile: (305 577-1063
*Attorneys for Scottsdale Insurance Company*

Case No. CA-020418-01

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 1, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of the electronic filing to all counsel of record.

HINSHAW & CULBERTSON LLP

*/s/ Clinton S. Payne*
Clinton S. Payne
Florida Bar No. 0044644
2525 Ponce de Leon Blvd.
Fourth Floor
Coral Gables, FL 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
Primary: cpayne@hinshawlaw.com
Secondary: dconnolly@hinshawlaw.com
*Attorneys for Defendant SCOTTSDALE INSURANCE COMPANY*